**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | Civil Action No. 6:20-00952-ADA |
| **BRAZOS LICENSING AND** | § | Civil Action No. 6:20-00953-ADA |
| **DEVELOPMENT,** | § | Civil Action No. 6:20-00956-ADA |
| | § | Civil Action No. 6:20-00957-ADA |
| *Plaintiff* | § | Civil Action No. 6:20-00958-ADA |
| | § | |
| **v.** | § | |
| | § | |
| **ONEPLUS TECHNOLOGY** | § | |
| **(SHENZHEN) CO., LTD.** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD.'S
RENEWED MOTION TO STRIKE PLAINTIFFS'
<u>FINAL INFRINGEMENT CONTENTIONS</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL HISTORY.................................................................................. 2

III.   LEGAL STANDARD......................................................................................... 4

IV.   ARGUMENT ...................................................................................................... 5

     A.     WSOU Has No Legal Basis To Plead Indirect Infringement Because There Is No Evidence of the Requisite Pre-Suit Knowledge ............................................ 6

     B.     WSOU Again Failed To Allege the Requisite Specific Intent for Induced Infringement.................................................................................................... 9

     C.     WSOU's Contributory Infringement Allegations Are Similarly Deficient ......... 13

     D.     WSOU's Infringement Contentions Under the Doctrine of Equivalents Should Be Struck with Prejudice ........................................................................ 15

     E.     WSOU Should Not be Granted Leave (Again) To Amend Its Final Infringement Contentions .......................................................................... 17

V.    CONCLUSION.................................................................................................. 18

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter,*
   620 F. App'x 934 (Fed. Cir. 2015) ...................................................................5, 13

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.,*
   No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ........................5, 6, 12, 13

*Aguirre v. Powerchute Sports, LLC,*
   No. SA-10-CV-0702 XR, 2011 WL 2471299 (W.D. Tex. 17, 2011).......................................6

*Castlemorton Wireless, LLC v. Bose Corp.,*
   No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)........................6, 8

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
   859 F.3d 1352 (Fed. Cir. 2017)...........................................................................12

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.,*
   No. C 16-06180, 2017 WL 2630088 (N.D. Cal. June 19, 2017) ...........................................11

*Commil USA, LLC v. Cisco Sys., Inc.,*
   135 S. Ct. 1920 (2015).........................................................................................5, 6

*Computer Acceleration Corp. v. Microsoft Corp.,*
   503 F. Supp. 2d 819 (E.D. Tex. Aug. 24, 2007) ...............................................................5

*Creagri, Inc. v. Pinnaclife Inc.,*
   LLC, No. 11-CV-06635-LHK, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012) ...................9, 14

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.,*
   2009 WL 81874 (E.D. Tex. Jan. 12, 2009).......................................................................5, 18

*Finjan, Inc. v. Proofpoint, Inc.,*
   No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)................................15

*Fujitsu Ltd. v. Netgear Inc.,*
   620 F.3d 1321 (Fed. Cir. 2010)..........................................................................................13

*Glob.-Tech Appliances, Inc. v. SEB S.A.,*
   563 U.S. 754 (2011)............................................................................................................6

*Intell. Ventures I LLC v. AT&T Mobility LLC,*
   No. CV 13-1668-LPS, 2017 WL 658469 (D. Del. Feb. 14, 2017)....................................5, 17

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
  628 F. Supp. 2d 703 (E.D. Tex. 2008) ...................................................................................4

*Mobile Telecomms. Techs., LLC v. Blackberry Corp.*,
  No. 3:12-CV-1652, 2016 WL 2907735 (N.D. Tex. May 17, 2016) ...........................................4

*Nazomi Commc'ns, Inc. v. Samsung Telecommc'ns, Inc.*,
  No. C-10-05545 RMW, 2013 WL 4610068 (N.D. Cal. Aug. 28, 2013) ................................16

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019) ..............................9

*Parus Holdings Inc. v. Apple Inc.*,
  No. 6:19-cv-00432-ADA, Dkt. 28 ........................................................................................8

*Promotional Techs., LLC v. Facebook, Inc.*,
  No. 3:11-CV-3488-P, 2012 WL 13026789 (N.D. Tex. Sept. 27, 2012) ...................................6

*Proxyconn Inc. v. Microsoft Corp.*,
  No. SACV 11-1681, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ........................................7

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
  Case No. 2:21-cv-9011-RGK, Dkt. No. 146 (C.D. Cal. Jan. 18, 2022) ..................................7

*Sycamore IP Holdings LLC v. AT&T Corp.*,
  No. 2:16-CV-588-WCB, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017) ................................15

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996) ...........................................................................................17

*WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*, No. W-20-CV-00952-ADA,
  2022 WL 174517 (W.D. Tex. Jan. 18, 2022). ...............................................................2, 4, 9

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 247 (D. Del. 2021) ......................................................................................7

## I.       INTRODUCTION

Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus") respectfully moves to strike Plaintiff WSOU Investments, LLC D/B/A Brazos Licensing and Development's ("WSOU") Final Infringement Contentions because they do not cure deficiencies that persist from WSOU's amended preliminary infringement contentions.

WSOU's Final Infringement Contentions remain deficient with respect to at least WSOU's indirect infringement allegations and allegations of infringement under the doctrine of equivalents ("DOE").[1]   Indirect infringement requires that the accused infringer have pre-suit knowledge of the asserted patents.  WSOU has not alleged that OnePlus had the requisite knowledge, and therefore WSOU's indirect infringement contentions have no legal basis and cannot survive this motion to strike.  Moreover, WSOU alleges that OnePlus provided instructions for, advertised, and promoted the accused products, but does not explain how OnePlus—a company that does not even sell the accused products in the United States—has participated in any of these activities or why any of these generic activities constitute indirect infringement of each of the asserted patents.

Like its amended preliminary infringement contentions, WSOU's infringement arguments under the doctrine of equivalents are either non-existent or comprised of boilerplate assertions that courts repeatedly find to be insufficient.  It would be unfair and highly prejudicial to OnePlus if WSOU were later allowed to present brand-new DOE theories that OnePlus did not have reasonable notice of and an opportunity to investigate during fact discovery.

OnePlus's previous motion to strike WSOU's amended preliminary infringement contentions raised these same issues.  The Court "agree[d] with OnePlus's characterizations

---

[1] OnePlus is still reviewing and analyzing WSOU's Final Infringement Contentions and the allegations contained therein.  OnePlus reserves all rights to challenge any other portion of WSOU's contentions.

regarding the asserted indirect infringement and doctrine of equivalents claims" and stated that "OnePlus may file another motion to strike after WSOU provides its [F]inal [I]nfringement [C]ontentions."  Dkt. 77 (-952 Case) at 6; *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*, No. W-20-CV-00952-ADA, 2022 WL 174517, at *2-3 (W.D. Tex. Jan. 18, 2022).  WSOU did not meaningfully amend its contentions to remedy the previously-noted deficiencies.

There is no excuse for WSOU's failure to provide sufficient allegations of indirect infringement or infringement under the DOE at this stage of the case, with less than three months of fact discovery left.  The Court should strike these boilerplate contentions for all five cases and preclude WSOU from being able to rely on these undisclosed theories.

## II.    PROCEDURAL HISTORY

WSOU served its initial infringement contentions for each of the five pending cases on May 18, 2021.  The infringement contentions included generic allegations of indirect infringement and infringement under the doctrine of equivalents, but neither alleged any specific acts of indirect infringement nor provided an equivalents analysis for any claim.  *Id.*

OnePlus wrote to WSOU on May 28, 2021 and June 2, 2021, asking that WSOU supplement its contentions.  Among other things, OnePlus explained that WSOU's initial contentions were deficient as they failed to disclose the basis for WSOU's contentions of indirect infringement and infringement under the doctrine of equivalents.  Exs. 11-12.[2]  WSOU did not respond to either of these letters, or to a follow-up email.  Ex. 13.

Having thrice written to WSOU to no effect, OnePlus sought assistance from this Court.  On June 10, 2021, OnePlus wrote to the Court's Law Clerk, requesting a discovery hearing to

---

[2] Citations to exhibits throughout refer to exhibits to the Declaration of Michael J. Lyons filed contemporaneously with this motion.

address WSOU's deficient contentions and an order that WSOU amend its contentions.   On September 23, 2021, the parties appeared before Judge Albright to discuss the deficient infringement contentions along with other discovery issues.  The Court ordered the parties to meet and confer regarding the infringement contentions and report back to the Court if any disputes remained unresolved.  During a conference on October 5, WSOU agreed to supplement, but would not describe its contemplated supplementation or commit to substantially addressing OnePlus's concerns.  On October 12, OnePlus notified this Court that the parties remained at an impasse and provided a summary of each party's position.  The Court responded on October 13, 2021, noting that if WSOU's Amended Infringement Contentions did not address its concerns, OnePlus could proceed by filing a motion to strike.

Two weeks later, WSOU served its Amended Infringement Contentions.  These Amended Contentions added only a generic sentence related to indirect infringement and did not identify or analyze any instances where it was relying on the doctrine of equivalents to establish infringement.  On November 9, 2021, OnePlus informed WSOU that its Amended Infringement Contentions were still deficient.  Ex. 14.  WSOU disagreed and refused to provide any further supplementation.  *Id.*

OnePlus filed a Motion to Strike Plaintiff's Amended Infringement Contentions on November 24, 2021.  Dkt. 62 (-952 Case).  On January 11, 2022, this Court held a hearing concerning OnePlus's motion.  On January 18, 2022, the Court denied OnePlus's motion but noted that "denial of the Motion to Strike should not be perceived as an acceptance of WSOU's current preliminary infringement contentions."  Dkt. 77 (-952 Case) at 5.  The Court ordered that, for the -952, -953, -956, and -958 cases, "WSOU must confirm whether the asserted patents are standard

essential."[3]  *Id.* at 4.  The Court further stated that:

> "While the Court agrees with OnePlus's characterizations regarding the asserted indirect infringement and doctrine of equivalents claims, the Court denies OnePlus's request to strike without prejudice. OnePlus may file another motion to strike after WSOU provides its final infringement contentions."

*Id.* at 6.  The Court ordered WSOU to provide Final Infringement Contentions by January 28, 2022. *Id.* at 5.

By January 28, WSOU had not yet obtained the source code it claimed was needed to provide its Final Infringement Contentions.  After requesting a further extension, the Court extended WSOU's deadline to provide its Final Infringement Contentions to two weeks from when WSOU gained access to the relevant source code, or no later than March 31, 2022.  *See* Ex. 15. WSOU served its Final Infringement Contentions on March 31, 2022.[4]

As discussed below, WSOU's Final Infringement Contentions did not remedy, among other things, its facially deficient contentions regarding indirect infringement and infringement under the doctrine of equivalents.

## III.   LEGAL STANDARD

Proper infringement contentions provide a defendant with notice of a plaintiff's particular infringement theories beyond that which is provided by the language of the patent claims themselves. *See Mobile Telecomms. Techs., LLC v. Blackberry Corp.*, No. 3:12-CV-1652, 2016 WL 2907735, at *1 (N.D. Tex. May 17, 2016); *see also WSOU v. OnePlus,* 2022 WL 174517 at *2-3 (cautioning WSOU that its infringement contentions "must provide sufficient notice to

---

[3] WSOU has since confirmed that it asserts that the Asserted Patents in the -952, -953, -956, and -958 cases are standard essential patents.

[4] This motion does not address and omits several other deficiencies to streamline the current argument before the Court.  OnePlus reserves all rights to address the other remaining deficiencies in WSOU's infringement contentions at the appropriate time, including by summary judgment.

OnePlus"); *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707 (E.D. Tex. 2008) ("Infringement Contentions must provide 'particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by mere language of the patent rules themselves.'") (quoting *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)); *Intell. Ventures I LLC v. AT&T Mobility LLC*, No. CV 13-1668-LPS, 2017 WL 658469, at *2 (D. Del. Feb. 14, 2017) ("Infringement contentions ... serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim.") (citing *Motion Games, LLC v. Nintendo Co.*, 2015 WL 1774448, at *2 (E.D. Tex. Apr. 16, 2015)).

"Deciding whether infringement contentions should be struck is similar to deciding whether evidence should be excluded for discovery violations" and is "akin to deciding whether the pleading deadlines of a scheduling order should be extended." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. Aug. 24, 2007). "The tests for determining whether to allow a party to supplement infringement contentions and for determining whether to strike infringement contentions are essentially the same." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009). In particular, Courts consider "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings." *Id.*

## IV.    ARGUMENT

For both induced and contributory infringement, a plaintiff must plead facts to support an inference of a defendant's "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015); *see Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015). For induced infringement, a

plaintiff must also plead facts showing that each defendant "had [a] specific intent to induce the [third party's] patent infringement." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-365, 2014 WL 2892285, at *2 (W.D. Tex. May 12, 2014). The "specific intent" element is "demanding" and requires more than "unsubstantiated assertions" or "generalized allegations" as to the intent of the alleged infringer. *Id.* at *7-8. Specific intent requires more than knowledge of the induced acts; rather, "[l]iability for inducing patent infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil*, 135 S. Ct. at 1926; *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (requiring that the accused infringer must have "knowledge that the induced acts constitute patent infringement").

### A.    WSOU Has No Legal Basis To Plead Indirect Infringement Because There Is No Evidence of the Requisite Pre-Suit Knowledge

WSOU's indirect infringement contentions fail because they do not allege the required "knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926. Indeed, this Court has specifically held that indirect infringement requires a showing of pre-suit knowledge. *See Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020) (this Court dismissing indirect infringement allegations because the plaintiff did "not plead any facts that would support an allegation of pre-suit knowledge"); *see also Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) ("Knowledge is still required [for claims of indirect infringement] and Aguirre did not allege that Octagon acted with knowledge. To the extent Aguirre relies on knowledge of Aguirre's patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement.") (citing *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010)); *Promotional Techs., LLC v.*

*Facebook, Inc.*, No. 3:11-CV-3488-P, 2012 WL 13026789, at *2 (N.D. Tex. Sept. 27, 2012) ("A complaint and the preliminary infringement contentions remain two separate and distinct filings both in terms of the level of detail required and the temporal stage at which they are made. … [T]he standard for sufficiently pleading a complaint remains lower than that required of preliminary infringement contentions.").

Other courts—including the District of Delaware and Central District of California in very recent decisions—have agreed with this Court that a claim of induced infringement requires the pre-suit knowledge that OnePlus lacked and that WSOU has never even plead or alleged. *See, e.g.*, *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) ("I have held in prior opinions that the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages."); *Ravgen, Inc. v. Quest Diagnostics Inc.*, Case No. 2:21-cv-9011-RGK, Dkt. No. 146 at 4-5 (C.D. Cal. Jan. 18, 2022) ("[T]his Court holds that to state a claim for induced infringement, a plaintiff must allege in an original complaint that the alleged inducer had knowledge of the patent-in-suit prior to filing.") (internal quotation marks and citations omitted); *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) (dismissing inducement and contributory infringement claims based on post-suit knowledge because they "require[] this Court to bootstrap the knowledge Defendants now have based on Plaintiffs filing of the Complaint onto defendant's acts before Plaintiff filed its complaint") (citing *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998) (reversing a finding of liability for inducing infringement because liability could not be predicated on any acts that occurred prior to defendant having notice of the patent)).

Despite this clear requirement, the infringement contentions point to no evidence that

OnePlus had any knowledge of the patents.  *See* Exs. 1-10.  WSOU's sole allegation regarding knowledge of the patents is a conclusory statement that "[t]he service of this Complaint upon Defendant constitutes actual knowledge of infringement as alleged here."  Dkt. 1 ¶ 13.  But this Court has previously rejected virtually identical allegations of knowledge, and should do so again here.  For example, in *Parus*, this Court dismissed indirect infringement claims where the plaintiff's only allegation of knowledge of the patent was that:

> "Defendant Apple has had knowledge of the '431 Patent since at least the filing of the original complaint.  By the time of trial, Defendant Apple will have known and intended (since receiving such notice) that their continued actions would actively induce the infringement of the claims of the '431 Patent."

*Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-00432-ADA, Dkt. 28 (Amended Compl.) ¶ 44 (W.D. Tex. Oct. 21, 2019) (Ex. 16); *see id.* (Feb. 20, 2020 Text Order) (W.D. Tex. Feb. 20, 2020) (order granting Samsung's Renewed Motion to Dismiss indirect infringement claims) (Ex. 17).  Just like the plaintiff in *Parus*, WSOU fails to allege pre-suit knowledge and thus fails to state a claim for indirect infringement.  *See id.*; *see also Castlemorton*, 2020 WL 6578418 at *5 ("Because Castlemorton's complaint does not plead any facts that would support an allegation of pre-suit knowledge, the Court GRANTS Bose's motion to dismiss Castlemorton's indirect infringement claims.").

Discovery in this case has only further proved that WSOU's assertions must be struck, as OnePlus has explained in its discovery responses that OnePlus first learned of the asserted patents from the Complaint filed in this action.  Ex. 18 (OnePlus Response to RFP No. 6 for -952 Case) at 18 (Nov. 10, 2021) ("The Complaint filed in this action (Dkt. No. 1) is sufficient to show how and when OnePlus first became aware of the Patent-in-Suit."); *see also* Exs. 19-22 (same for other Cases and asserted patents).  This Court should follow its same reasoning from previous cases and

strike WSOU's indirect infringement claims.

**B.   WSOU Again Failed To Allege the Requisite Specific Intent for Induced Infringement**

The Court already "agree[d] with OnePlus's characterizations" that the allegations in WSOU's initial infringement contentions were "boilerplate" and insufficient to sustain the contentions.  *See WSOU v. OnePlus*, 2022 WL 174517 at *3.  Despite the Court's admonition, WSOU's Final Infringement Contentions recite the same boilerplate language without curing the defects this Court specifically identified.  Indeed, even after more than a year of discovery, WSOU has still not identified what purported instructions or advertisements allegedly serve as the basis for WSOU's contention that OnePlus directs a third-party to indirectly infringe the asserted patents.  *See, e.g.*, Ex. 1 at 6-7.  WSOU's contentions should be struck for this reason alone.  *See Creagri, Inc. v. Pinnaclife Inc.*, LLC, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *5 (N.D. Cal. Nov. 2, 2012) (finding indirect infringement contentions that stated defendant advised third parties to use the products in an infringing manner but failed to identify which advertisements led to infringing behavior was insufficient "boilerplate" language).

WSOU's Final Infringement Contentions merely added four additional paragraphs that do nothing to provide OnePlus with adequate notice of WSOU's basis for its induced infringement contentions or otherwise cure the deficiencies of the initial contentions.  In particular, they fail to explain how OnePlus possesses the requisite specific intent.  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (infringement through inducement requires factual "'evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'") (quoting *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)).

Despite over 46,000 pages of documents produced by OnePlus in this case, WSOU has failed to make any evidentiary showing of such culpable conduct.  Each paragraph is addressed below:

> [**First Paragraph:**] Plaintiff further asserts that Defendant has indirectly infringed and continues to indirectly infringe by actively inducing infringement of one or more of the claims of the Asserted Patent through the Accused Instrumentalities. Plaintiff also asserts that these third-party partners, vendors, and end users directly infringe at least one or more of the claims of the Asserted Patent through the manufacture, use, sale, offer to sell, or importation of the Accused Instrumentalities, which upon information and belief, are manufactured and sold by third parties including its subsidiary OnePlus U.S.A. Corp., as well as retailers such as Best Buy, Amazon, Walmart, T-Mobile, and Verizon.

Ex. 1 at 5 (-952 Case); *see also* Exs. 3, 5, 7, 9 (same for other cases).

This first paragraph says nothing to support any allegations as to OnePlus's culpability. When it comes to OnePlus, WSOU only makes the conclusory assertion that OnePlus "indirectly infringed and continues to indirectly infringe by actively inducing infringement of one or more of the claims of the Asserted Patent through the Accused Instrumentalities." *See id.*  Neither this nor anything else in this new paragraph provides any explanation as to how OnePlus is alleged to actively induce infringement.  WSOU's allegation that various other third parties also directly infringe does not cure the deficiency, as it does not explain and provides no details whatsoever regarding OnePlus's purported role in the alleged active inducement.

> [**Second Paragraph:**] Furthermore, Defendant has actively induced infringement by encouraging the use of the Accused Instrumentalities in ways that infringe each Asserted Claim. For example, Qualcomm provides OnePlus with technical materials and design documents related to the technology that is loaded onto the OnePlus devices. On information and belief, Qualcomm also provided OnePlus with an executable file to load the Qualcomm technology including software and firmware onto the products. OnePlus is responsible for the decision to load the Qualcomm technology onto the accused devices and other source code containing the infringing technology. OnePlus has not identified any non-infringing alternatives in its written discovery. *See* Response to Interrogatory No. 6. OnePlus appears to admit the Asserted Patents are necessary for the use of the Accused Functionality through its licensing defense.

Ex. 1 at 5-6 (-952 Case); *see also* Exs. 3, 5, 7, 9 (same for other cases).

10

This second paragraph also fails to allege sufficient details as to how OnePlus allegedly actively induced infringement.  In fact, this paragraph focuses on activities allegedly conducted by Qualcomm, not OnePlus.  And WSOU's assertion that "OnePlus is responsible for the decision to load the Qualcomm technology onto the accused devices and other source code containing the infringing technology" is merely an allegation concerning OnePlus's alleged role in making the accused devices, and thus it relates at most to direct, not indirect infringement.  Nothing here sufficiently alleges facts that support an inference of any culpable conduct by OnePlus to actively induce another to infringe any asserted patent.

> [**Third Paragraph:**]   OnePlus has also actively induced infringement by encouraging the use of the Accused Instrumentalities in ways that infringe each Asserted Claim, including, but not limited through providing instructions to its customers and partners to encourage and instruct the user or partner to utilize the accused product in an infringing manner. OnePlus contributes to the infringement of the Asserted Patent by providing product manuals, specifications and/or instructions to consumers, partners, and resellers regarding the operation of the Accused Instrumentalities, including providing the information through third-parties or its subsidiary OnePlus USA. On information and belief, OnePlus also provides information through third-party websites or OnePlus websites (including but not limited to websites of its subsidiaries) regarding how to operate the accused devices in a manner that is infringing. On information and belief, OnePlus is responsible for designing, drafting, and issuing these materials into the United States market.

Ex. 1 at 6 (-952 Case); *see also* Exs. 3, 5, 7, 9 (same for other cases).

In this third paragraph, WSOU generally states that the accused products are sold through third parties and that OnePlus provides instructions, product manuals, specifications, and information directly or through OnePlus and third-party websites "regarding how to operate the accused devices in a manner that is infringing."  But such generic assertions, which do not even cite a single piece of information allegedly relevant to inducing infringement, is nowhere close to sufficient for WSOU to be able to sustain this theory.  *See Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-06180, 2017 WL 2630088, at *5 (N.D. Cal. June 19, 2017) ("[B]oilerplate

language that simply claims an accused infringer provided instructions on, advertised, or promoted

the use of an accused product, without describing which instructions, advertisements, or

promotions led to what infringing behavior, does not suffice … .").  Moreover, such generic

allegations cannot show that OnePlus induced someone to perform ***all*** (and not just some) of the

steps that constitute infringement.  *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859

F.3d 1352, 1364 (Fed. Cir. 2017) ("The mere knowledge of possible infringement by others does

not amount to inducement; specific intent and action to induce infringement must be proven.");

*see also Affinity Labs*, 2014 WL 2892285, at *7 (dismissing induced infringement claims where

"Plaintiff does not specify how the marketing and selling activities of Toyota actually induced

third-parties to infringe the Asserted Patents. The complaint generally alleges that Toyota induced

its customers to purchase its vehicles, but fails to allege how Toyota induced its customers to use

the vehicles in a manner that would violate the Asserted Patents.").  There are simply no facts

alleged here sufficient to satisfy the requirements for showing inducement of infringement.

> [**Fourth Paragraph**:] Defendant knew or should have known that such encouragement would induce infringement. Defendant has taken active steps with the specific intent to encourage and cause others to use each Accused Instrumentality in ways that infringe each Asserted Claim. Such active steps by Defendant with specific intent to induce infringement have included, among other things designing/selecting the accused functionality, advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others; encouraging and influencing others to import, offer to sell, and/or sell the Accused Instrumentalities; directing and instructing others to use the Accused Instrumentalities in infringing ways; and by providing the Accused Instrumentalities to others.

Ex. 1 at 6 (-952 Case); *see also* Exs. 3, 5, 7, 9 (same for other cases).

WSOU's fourth and final new paragraph of allegations concerning indirect infringement

recites still more boilerplate assertions that merely parrot the legal standard.  WSOU's conclusory

allegations fail to present facts demonstrating that OnePlus either knew that the accused products

and alleged acts would infringe or that the promotion of OnePlus products would induce or

encourage others to infringe any asserted patent.  *See Addiction*, 620 F. App'x at 938 ("[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement."); *Affinity Labs*, 2014 WL 2892285, at *7, *8 (finding "Plaintiffs generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are [] insufficient.").  As a result, WSOU's inducement claim should be dismissed.

### C.    WSOU's Contributory Infringement Allegations Are Similarly Deficient

"To establish contributory infringement, the patent owner must show the following elements relevant to this appeal: 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

WSOU's boilerplate infringement allegations similarly do not recite facts with the specificity needed to support a claim for contributory infringement.  The entirety of WSOU's contributory infringement allegation is the following:

> OnePlus contributes to the infringement of the Asserted Patent by providing product manuals, specifications and/or instructions to consumers, partners, and resellers regarding the operation of the Accused Instrumentalities, including providing the information through third-parties or its subsidiary OnePlus USA.

Ex. 1 at 6 (-952 Case); *see also* Exs. 3, 5, 7, 9 (same for other cases).

As explained above, these allegations fail to provide a basis for contributory infringement because OnePlus had no pre-suit knowledge of any of the asserted patents.

Even if WSOU somehow overcame that dispositive hurdle, WSOU's wholly generic and conclusory assertions regarding unspecified "manuals, specifications and/or instructions" allegedly provided to unspecified third-parties is facially insufficient to support a claim of

contributory infringement.  *See Creagri*, 2012 WL 5389775 at *5-6 ("Throughout its '599 Patent infringement contentions, Creagri adds boilerplate language alleging Pinnaclife engaged in indirect and contributory infringement, such as 'advising others to use the … product in an infringing manner; advertising and promoting the use … in an infringing manner; and distributing instructions, scientific papers, and videos that guide customers to use the … product in an infringing manner.' Creagri fails to identify what advertisements and instructions lead to what infringing behavior. … [Creagri] must still disclose how exactly it believes Pinnaclife indirectly or contributorily infringed on the '599 Patent.  Its boilerplate language does not suffice.").

There is no explanation whatsoever as to how OnePlus allegedly providing these unidentified "manuals, specifications and/or instructions" constitutes contributory infringement. There is not even a conclusory allegation from WSOU that any of these things constitute "a material part of the invention" or have "no substantial noninfringing uses," both of which are requirements for contributory infringement.  WSOU's allegations are not only woefully deficient in alleging facts to support their contention—they do not even address the basic elements needed to prove a contributory infringement claim.

WSOU had months to investigate whether any facts support a theory of contributory infringement in this case, but its contentions offer nothing more than boilerplate statements: they neither recite any specific supporting facts nor identify a single piece of evidence supporting this theory.  WSOU should not be permitted to continue to assert this theory—and require OnePlus to expend time and resources defending against it—when WSOU's allegations do not even address all the requisite elements (even in conclusory fashion), provide no factual details providing fair notice of the theory's basis, and cite not even a single piece of supporting evidence.  The Court should strike WSOU's contributory infringement claims with prejudice.

**D.      WSOU's Infringement Contentions Under the Doctrine of Equivalents Should Be Struck with Prejudice**

The Court should also strike WSOU's boilerplate and conclusory allegations that the accused products infringe the asserted patents under the doctrine of equivalents.  *See Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (explaining that courts "have been clear that doctrine of equivalents theories must be laid out in detail in a party's infringement contentions and that the type of boilerplate allegations contained in [Plaintiff's] infringement contentions are insufficient"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) ("It is improper to assert the doctrine of equivalents with generic 'placeholder' language on the hope that future discovery might support such an assertion.").  Again, with few exceptions (discussed below), WSOU has merely repeated the same boilerplate phrases that this Court previously indicated were deficient.

*Cover Pleading for All Cases*:  The only change made in the Final Contentions was completely non-substantive—*i.e.*, changing the sentence "WSOU reserves the right to assert infringement solely under the doctrine of equivalents…" to "***Brazos*** reserves the right to assert infringement solely under the doctrine of equivalents…."  *See* Ex. 1 at 5 (-952 Case); *see also* Exs. 3, 5, 7, 9 (same for other cases).

*Claim Charts for All Cases*:  WSOU (or as it now prefers, ***Brazos***) does not alter or amend the previously asserted boilerplate language: "WSOU Investments, LLC ("WSOU" or "Plaintiff") contends that OnePlus, including OnePlus's employees, directly infringes each of the Asserted Claims, either literally or under the doctrine of equivalents."  *See* Ex. 2 at 2 (-952 Case); *see also* Exs. 4, 6, 8, 10 (same for other cases).  For the ***-952, -956, and -957 cases***, this boilerplate language constitutes the entirety of WSOU's contentions under the DOE.  *See generally* Exs. 2, 6, 8.

15

**Claim Chart for the -953 Case**: WSOU does not provide a single DOE assertion for claims 1, 4, 6, 13, and 14 aside from the facially deficient language discussed above.  WSOU adds DOE contentions to its claim charts for only asserted claims 2, 5, 16, and 17, but these contentions are just boilerplate and are devoid of any meaningful detail.  For example:

- Claim 2: adding language "[The accused functionality] meets this limitation literally or under the doctrine of equivalents (DOE)."  Ex. 4 at 12.
- Claim 2: adding language "The [accused functionality] performs perform [*sic*] substantially the same function as the claimed indication in substantially the same way – by being transmitted by the mobile station, and to achieve substantially the same result as the claim element."  *Id.*
- Claim 5: adding language "This method is performed by the Accused Devices either literally or under the doctrine of equivalents."  *Id.* at 17.
- Claims 16 & 17: Asserting the accused functionality allegedly satisfies "literally or under the doctrine of equivalents" the claim language.  *Id.* at 24, 26.
- Claim 17: Asserting "There is an insubstantial difference between including the indication within the BSR and in an extension of the BSR."  *Id.* at 26.

These threadbare assertions provide no details as to how any alleged equivalents satisfy either the insubstantial differences test or the function-way-result test required for DOE, and thus provide no basis for WSOU to continue to be able to rely on DOE in this case.  *See Nazomi Commc'ns, Inc. v. Samsung Telecommc'ns, Inc.*, No. C-10-05545 RMW, 2013 WL 4610068, at *5 (N.D. Cal. Aug. 28, 2013) ("A boilerplate reservation is inadequate, and courts have frequently dismissed claims under the doctrine of equivalents based upon boilerplate language in their infringement contentions."); *Hewlett-Packard Co. v. Mustek Sys.*, Inc., 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) (evidence for infringement under doctrine of equivalents must include "particularized testimony and linking argument").

**Claim Chart for the -958 Case:** WSOU does not provide a single DOE assertion for claims

1, 2, 4, or 11 aside from the facially deficient boilerplate language discussed above. *See* Ex. 10.

For claim 3, WSOU's contentions do not address the agreed and tentative claim constructions for

the terms "coding level" and, as such, effectively operate as a placeholder for WSOU to spring

new contentions upon OnePlus whenever it chooses. [5] *See Intell. Ventures I*, 2017 WL 658469 at

*4 (striking final infringement contentions because "IV's failure to serve infringement contentions

that apply the Court's claim construction was neither substantially justified nor harmless" and

"their deficiency is highly prejudicial to Defendants, who lack notice of how their accused products

purportedly infringe under the DOE").

Overall, WSOU fails to state with specificity how the accused products purportedly

infringe the asserted claims under the DOE and are insufficient to put OnePlus on fair notice of

any DOE allegations so that it is not prejudiced and has an opportunity to investigate them during

fact discovery. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.

Cir. 1996) ("[E]vidence must be presented on a limitation-by-limitation basis. Generalized

testimony as to the overall similarity between the claims and the accused infringer's product or

process will not suffice."). Because WSOU's Final Infringement Contentions remain deficient

with respect to DOE, the Court should strike WSOU's boilerplate contentions and preclude WSOU

from relying on DOE in this case.

### E.   WSOU Should Not be Granted Leave (Again) To Amend Its Final Infringement Contentions

Many months ago, OnePlus notified WSOU its infringement contentions were deficient.

---

[5] The Special Master's recommended claim construction of "coding level" is "a parameter that could, but does not necessarily, correlate to a detection probability." *See* Dkt. 58 (-958 Case) at 8 (Nov. 3, 2021). WSOU's infringement contentions do not address, apply, or even recite this claim construction. *See* Ex. 10 at 22 ("The difference between assigning a coding level, and performing coding such that the coding level is different, is insubstantial."); *id.* (The Accused Products perform substantially the same function – coding at least part of the channel information with a coding level depending on the importance of the channel information in the link adaptation, in substantially the same way – using an error-correcting code, to achieve substantially the same result – encoding parts of the channel information based on their importance in the link adaptation.").

WSOU ignored OnePlus for months, forcing OnePlus to ask this Court to intervene.  Even after this Court admonished WSOU that its infringement contentions were indeed deficient and that WSOU must provide more than un-supported, bare-bones, and conclusory allegations to survive being struck or dismissed, WSOU failed to respond with adequate contentions to maintain claims at least for indirect infringement and infringement under the DOE.

WSOU has had ample opportunity to amend its contentions and provide adequate factual detail and support to put OnePlus on fair notice of its theories.  WSOU ignored both OnePlus's and this Court's previous identification of deficiencies and invitations to provide factually sufficient contentions.  WSOU has now provided its **Final** Infringement Contentions, the deadline to amend pleadings (April 20, 2022) has come and gone, and WSOU should not be given yet another opportunity to provide new infringement contentions.  Any such opportunity would unduly prejudice OnePlus given that fact discovery closes in just a few months.  It was WSOU's own decision to not inform OnePlus of WSOU's infringement allegations before filing suit.  And it was WSOU's decision to avoid investigating and pleading a sufficient basis for indirect infringement and infringement under the DOE.  *See Davis-Lynch*, 2009 WL 81874, at *4 ("[T]he relative importance of including these products in its [infringement contentions] should have generated a commensurate amount of diligence.").

## V.    CONCLUSION

For the above reasons, this Court should strike WSOU's indirect infringement and doctrine of equivalents allegations with prejudice.

Dated: June 13, 2022                              */s/ Michael J. Lyons*
                                                  Michael J. Lyons*
                                                  California Bar No. 202284
                                                  michael.lyons@morganlewis.com
                                                  Ahren C. Hsu-Hoffman

Texas Bar No. 24053269
Ahren.hsu-hoffman@morganlewis.com
Jacob J.O. Minne*
California Bar No. 294570
jacob.minne@morganlewis.com
Austin L. Zuck*
California Bar No. 318434
austin.zuck@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
T: 650.843.4000
F: 650.843.4001

Elizabeth M. Chiaviello
Texas Bar. No. 24088913
elizabeth.chiaviello@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201
T: 214.466.4000
F: 214.466.4001

*Admitted *pro hac vice*

***Attorneys for Defendant OnePlus
Technology (Shenzhen) Co. Ltd.***

19

## <u>CERTIFICATE OF CONFERENCE</u>

On Thursday, June 9, 2022, counsel for OnePlus requested WSOU's position on the foregoing motion and requested that WSOU provide its position by 2 PM CT on Friday June 10, 2022. After WSOU did not respond, counsel for OnePlus again requested WSOU's position by 5 PM CT on June 10. WSOU again did not respond. Around 7:30 PM CT on June 10, OnePlus requested (for a third time) WSOU's position by 5 PM CT on Monday June 13, and notified WSOU that, if WSOU continues to refuse to respond to OnePlus's request for WSOU's position, OnePlus would proceed with filing the foregoing motion shortly after 5 PM CT on June 13. *See* Ex. 23. As of the filing of this motion, WSOU has refused to provide its position on this motion.

*/s/ Michael J. Lyons*
Michael J. Lyons

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on June 13, 2022, a true and correct copy of the foregoing document was served via electronic mail on counsel of record per Local Rule CV-5.

*/s/ Michael J. Lyons*
Michael J. Lyons